UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LYNN MARIE CACI,

                            Plaintiff,

v.                                                      5:14-CV-01407

                                                       (LEK/TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                            OF COUNSEL:

OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN               GRAHAM MORRISON, ESQ.
United States Attorney for the          Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL               STEPHEN P. CONTE, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, United States Senior District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, the Court recommends that the decision of the Commissioner be affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lynn Marie Caci was born on March 13, 1971. (Administrative Transcript at 42, 126.[1]) Plaintiff has a ninth-grade education. (T. at 43.) Plaintiff has a valid driver's license, but does not own or drive a car. (T. at 51.[2]) Plaintiff reported past work as a cook, cashier, assistant manager, retail stocker, and inventory specialist. (T. at 43-46, 169.) Plaintiff alleges disability due to left leg and knee problems. (T. at 47, 58.)

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI") on April 24, 2012, alleging disability as of February 8, 2011. (T. at 12, 75-76, 161.) Both applications were initially denied on July 10, 2012. (T. at 75-76.) A hearing was held on March 27, 2013, before Administrative Law Judge ("ALJ") Barry E. Ryan. (T. at 40-57.) On June 17, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 12-22.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 10, 2014. (T. at 1-3.) Plaintiff timely commenced this action on November 19, 2014. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Page numbers in citations to the Administrative Transcript refer to the Bates stamped page numbers on the bottom right of the original document rather than to the page numbers assigned by the Court's electronic filing system. Citations to the Administrative Transcript will be referenced as "T" herein.

[2] Plaintiff's medical records indicate that she was the driver in two motor vehicle accidents that occurred in 2010. (T. at 252, 258.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010);[3] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

## III.    THE ALJ'S DECISION

The ALJ determined that Plaintiff met the insured status requirements of the SSA through June 30, 2015. (T. at 14.)  At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of February 8, 2011.  *Id.*  Next, the ALJ found that Plaintiff's obesity and degenerative joint disease of the left knee were "severe" impairments.  (T. at 14-16.)  At step three, the ALJ determined that Plaintiff's severe impairments or combination of impairments did not meet or medically equal the severity of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 16.)

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work.  (T. at 17-20.)  Specifically, Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, sit for six hours, stand for two hours, and walk for two hours in an eight-hour day.  (T. at 17.)  Plaintiff could bend and stoop without limitation but could only occasionally squat, kneel, crawl, and climb stairs.  *Id.*

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work.  (T. at 20-21.)  At step five, considering the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, (the "grids"), the ALJ determined that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (T. at 21.)  Because Plaintiff's nonexertional postural restrictions did not significantly erode the sedentary occupational base, the ALJ determined that the testimony of a vocational expert was unnecessary.  (T. at 22.)  The ALJ concluded that Plaintiff "has not been under a disability . . . from February 8, 2011, through [June 17, 2013].  *Id.*

## IV. THE PARTIES' CONTENTIONS

First, Plaintiff argues that the ALJ failed to develop the administrative record by not recontacting Thomas Smallman, M.D., Plaintiff's orthopedic surgeon, for a functional assessment. (Dkt. No. 9 at 12-15.[4]) Second, Plaintiff claims that her RFC is not supported by substantial evidence because the ALJ relied upon a "vague" opinion of consultative examiner Kalyani Ganesh, M.D., failed to consider the opinions of Dr. Smallman, and erred in his assessment of Plaintiff's credibility. *Id.* at 15-17. Finally, Plaintiff argues that the ALJ erred at step five of the sequential evaluation by not obtaining the testimony of a vocational expert. *Id.* at 18-19. Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 10 at 6-13.) For the reasons discussed below, the Court agrees with the Commissioner, and recommends that the ALJ's decision be affirmed.

## V. ANALYSIS

### A. The Administrative Record

#### 1. Plaintiff's Treatment with Dr. Legrett

On November 15, 2011, Plaintiff presented to Internal Medicine Associates of Auburn with complaints of left leg swelling and pain. (T. at 260.) She denied any recent trauma and reported pain while weight bearing. *Id.* On exam, Plaintiff's left knee did not appear to be edematous. (T. at 261.) Plaintiff indicated some tenderness to palpation. *Id.* An x-ray of Plaintiff's left knee revealed moderate degenerative joint disease in the medial joint space compartment with no signs of any acute abnormalities. (T. at 262.)

---

[4] Page numbers in citations to the Docket refer to the page numbers assigned by the Court's electronic filing system.

On November 17, 2011, Plaintiff presented to Auburn Memorial Hospital complaining of left knee pain and swelling. (T. at 246.) Plaintiff reported that her pain was exacerbated by walking. (T. at 248.) On examination, Plaintiff had full range of motion in her left leg, and her gait was normal. *Id.* Plaintiff had generalized anterior tenderness of the left knee. *Id.* Plaintiff was diagnosed with knee pain and left knee osteoarthritis. *Id.* She was fitted with crutches and prescribed an anti-inflammatory, which she did not fill. (T. at 249, 294.) Plaintiff was advised to take "warm soaks" and "rest (use crutches)." (T. at 250.)

On December 15, 2011, Dr. Jeffrey Legrett, M.D., Plaintiff's primary care physician, indicated that Plaintiff had a 100% temporary impairment. (T. at 260.[5])

### 2. Plaintiff's Treatment with Dr. Smallman

On November 21, 2011, Plaintiff presented to Auburn Orthopedic Specialists complaining of knee pain and swelling. (T. at 294.) Plaintiff was seen by nurse practitioner, Melissa Butler ("ANP Butler"). *Id.* Despite presenting on crutches, ANP Butler noted that Plaintiff "ambulates with the ability to weight bear but she does have a mild limp." *Id.* On November 21, 2011, Plaintiff underwent a left lower extremity venous Doppler examination, which was normal. (T. at 289.) Plaintiff's MRI of the left knee revealed osteoarthritis of the patellofemoral joint, but the radiologist noted that this was fairly mild. (T. at 287.)

On December 7, 2011, Dr. Smallman reviewed Plaintiff's MRI and made arrangements to "scope the left knee" because of "the soft tissue impingement in the notch." (T. at 297.) Dr. Smallman estimated Plaintiff would return to work in six to eight weeks. (T. at 298.)

---

[5] The encounter note did not provide a function-by-function assessment of Plaintiff's specific limitation. (*See* T. at 260.) Dr. Legrett's office returned the medical source statement forms blank. (T. at 270-75.)

On January 18, 2012, Dr. Smallman performed arthroscopic surgery on Plaintiff's left knee.  (T. at 284, 305-06.)  ANP Butler saw Plaintiff on January 27, 2012, and indicated that Plaintiff was temporarily totally disabled.  (T. at 307-08.)  Plaintiff was prescribed physical therapy.  (T. at 307.)

Two months post-surgery, Plaintiff still reported pain in her left knee.  (T. at 309.)  She was attending physical therapy and had started a course of anti-inflammatories.  *Id*.  Encounter notes indicated Plaintiff remained under a "temporary total disability."  (T. at 310.)

On May 7, 2012, ANP Butler released Plaintiff for "light duty" work with no additional limitations.  (T. at 311.)  However, on May 11, 2012, Plaintiff reported swelling and knee pain while kneeling, squatting, and climbing stairs.  (T. at 312.)  Plaintiff ambulated without assistive devices and had a slow steady gait.  *Id*.  Plaintiff received a cortisone[6] injection and was released to "light duty with restrictions on kneeling, squatting, and stairs."  *Id*.

On May 21, 2012, Plaintiff reported that her left knee was "locking up" and swollen.  (T. at 313.)  On exam, there was no swelling or effusion of the knee.  *Id*.  Her knee was not warm to the touch, and was not erythematous.  *Id*.  She was continued on Lortab[7] and Methimazole.[8]  *Id*.

On June 12, 2012, Plaintiff reported feeling "awful."  (T. at 315.)  Dr. Smallman noted that she may be amendable to a resurfacing procedure, but recommended waiting six months to

---

[6] Cortisone injections can be used to treat and reduce the inflammation of small areas of the body. http://www.webmd.com/arthritis/cortisone-injection-soft-tissues-joints (last visited Dec. 18, 2015).

[7] Lortab is a brand of hydrocodone bitartrate/acetaminophen, which is used to treat pain. http://www.webmd.com/drugs/2/drug-7292/lortab-oral/details (last visited Dec. 18, 2015).

[8] Methimazole is used to treat overactive thyroid (hyperthyrodism).  http://www.webmd.com/drugs/2/drug-7251/methimazole-oral/details (last visited Dec. 18, 2015).  Plaintiff does not allege disability due to hyperthyroidism.  (*See* T. at 47, 58, 161.)

one year for the most promising implant to be released. *Id*. Dr. Smallman ordered a series of Supartz[9] injections. *Id*.

Dr. Smallman reviewed Plaintiff's June 12, 2012, x-ray of Plaintiff's left knee, which revealed "mild osteoarthritis, otherwise normal. Alignment is physiologic." (T. at 316.) Dr. Smallman opined that there was normal mineralization and no evidence of osteopenia in the left knee. *Id*.

On August 31, 2012, Plaintiff reported continued pain, particularly when she walked for prolonged periods of time and when standing. (T. at 358.) On examination, she had tenderness throughout the joint line and patellar tendon. *Id*. There was no effusion. *Id*. She had full range of motion and her left knee was stable. *Id*. ANP Butler assigned Plaintiff a 50% temporary impairment rating. *Id*.

On September 6, 2012, Plaintiff treated with Dr. Smallman and reported constant pain to her left knee and stated that it "gives out." (T. at 360.) Plaintiff received Supartz injections to the left knee on October 15, 2012, October 22, 2012, and October 29, 2012. (T. at 365-67.) On October 29, 2012, Plaintiff reported no improvement in her symptoms. (T. at 367.)

On November 21, 2012, Dr. Smallman indicated that Plaintiff's patellofemoral arthritis would not normally be a significant condition, but in the presence of a worker's compensation background it appeared a major issue. (T. at 368.) Dr. Smallman did not recommend any further intervention at that time. *Id*. He suggested the combination of analgesics and anti-inflammatories as necessary. *Id*.

---

[9] Supartz is a brand of hyaluronate sodium, a medication used to treat knee pain in patients with joint inflammation (osteoarthritis). http://www.webmd.com/drugs/2/drug-21749/supartz-intra-articular/details (last visited Dec. 18, 2015).

On January 7, 2013, a MRI of the left knee revealed a tear of the roots of the posterior horn of the medial meniscus, osteoarthritic changes, a small joint effusion, and small cyst.  (T. at 372.)  Plaintiff followed-up with Dr. Smallman on January 8, 2013, and he noted swelling in the knee.  (T. at 376.)  Plaintiff reported recurrent catching and "significant discomfort."  *Id*.  She reported that she was not taking any medications.  *Id*.

On January 16, 2013, Plaintiff was approximately one year-post arthroscopic surgery.  (T. at 377.)  Dr. Smallman opined that Plaintiff was "left with a residual loss of motion and a painful knee."  *Id*.

Dr. Smallman submitted a medical source statement, dated February 8, 2013.  (T. at 379-84.[10])  Regarding her ability to lift, carry, sit, stand, and walk in a work environment, Dr. Smallman indicated Plaintiff was "Temp. Total Disabled."  (T. at 379-80.)  She did not require the use of a cane to ambulate.  (T. at 380.)  He opined Plaintiff could continuously use both upper extremities for reaching, handling, fingering, feeling, pushing, and pulling.  (T. at 381.)  He indicated Plaintiff was "Temp Total Disabled" with respect to the operation of foot controls.  *Id*.  Dr. Smallman opined that Plaintiff could never climb stairs, ramps, ladders or scaffolds.  (T. at 382.)  He further opined Plaintiff could never balance, stoop, kneel, crouch, or crawl.  *Id*.  Regarding her ability to tolerate environmental conditions, Dr. Smallman again indicated "Temp Total Disabled."  (T. at 383.)  Finally, Dr. Smallman opined that Plaintiff could perform activities like shopping and traveling in moderation.  (T. at 384.)

On March 5, 2013, Dr. Smallman noted that Plaintiff "simply has not done well and continues to have significant symptoms."  (T. at 388.)  Dr. Smallman indicated that Plaintiff has "adopted a disabled lifestyle as a result of her symptom" and that it was "unusual for someone

---

[10] Dr. Smallman's office returned the first medical source statement blank.  (T. at 317-23.)

with her degree of arthritis to have the degree of disability that she presents with." *Id*. He was "reluctant" to proceed with further surgery and noted that she can be "considered totally disabled with respect to this condition." *Id*. Although Plaintiff complained of knee pain, Dr. Smallman noted that there was "no real pain with motion of the knee when she [was] distracted." *Id*. Dr. Smallman indicated that Plaintiff would not be able to return to her previous job and that her "lifestyle would involve sedentary activities only." *Id*. He further indicated that Plaintiff "can be considered moderately to severely disabled at this time and would be able to perform in a sedentary role only." *Id*.

### 3. Plaintiff's Consultative Examination with Dr. Ganesh

Plaintiff was examined by Dr. Ganesh on May 24, 2012. (T. at 290.) Plaintiff presented with crutches and did not appear in acute distress. (T. at 291.) Dr. Ganesh noted that Plaintiff showed a limp favoring the left, could not walk on her heels and toes, and could not squat. *Id*. Plaintiff did not require help changing for the examination or getting on and off the examination table. *Id*. She was able to rise from a chair without difficulty. *Id*.

On examination, Plaintiff's cervical and lumbar spine demonstrated full flexion, extension, lateral flexion, and full rotary movement bilaterally. (T. at 292.) Her thoracic spine gave no indication of scoliosis, kyphosis, or abnormality. *Id*. Plaintiff's straight leg test was bilaterally negative. *Id*. Plaintiff's shoulders, elbows, forearms, and wrists had full range of motion bilaterally. *Id*. Plaintiff had full range of motion of her right hip and right knee. *Id*. Her left hip flexion was 90 degrees, backward extension was 15 degrees, with full range of motion interior, exterior, abduction, and adduction. *Id*. Plaintiff's left knee flexion was 90 degrees. *Id*. Plaintiff's ankles also showed full range of motion. *Id*. Dr. Ganesh noted a strength of 5/5 in the upper extremities, 5/5 in the right lower extremity, and 4/5 in the left lower extremity. *Id*.

Plaintiff's extremities showed no significant varicosities, trophic changes, or muscle atrophy. *Id.* Plaintiff's hand and finger dexterity were intact, with a bilateral grip strength of 5/5. *Id.* Plaintiff had no motor or sensory deficits. *Id.*

Plaintiff reported that she cooked a couple of times a week, did laundry and cleaning once a week, and shopped once a month. (T. at 290.) She showered and dressed daily, and watched television. *Id.*

Dr. Ganesh diagnosed Plaintiff as status post left knee injury, status post left knee arthroscopic surgery, and chronic pain left knee. (T. at 292.) Significantly, Dr. Ganesh assessed that Plaintiff had no limitation sitting and in the use of her upper extremities, and moderate to severe limitations in standing, walking, and climbing. *Id.* Dr. Ganesh further noted that Plaintiff's use of the crutches appeared to be necessary at that time. *Id.*

### 4. Other Medical Evidence

On July 24, 2012, Plaintiff was examined by Charles Jordan, M.D., in connection with her 2000 Worker's Compensation claim.[11] (T. at 333-340.) Plaintiff reported difficulty with prolonged standing, walking, bending, and lifting. (T. at 338.) After reviewing Plaintiff's complete medical file, he diagnosed Plaintiff with "chronic knee pain secondary to degenerative arthritic change in the knee status post arthroscopy and chondroplasty." (T. at 339.) He opined that Plaintiff would be unable to perform her usual duties as an unloader and stocker since she had difficulty with prolonged standing, walking, bending and lifting. *Id.* Dr. Jordan opined that Plaintiff's degree of disability was "marked partial." *Id.*

---

[11] Plaintiff injured her left knee in 2000 while working as a stocker at Walmart. (T. at 46.) Due to her left knee injury, Mark Berg, M.D., restricted Plaintiff to four hours of work on November 27, 2000. (T. at 240-41.) Plaintiff presented to Auburn Community Hospital in 2009, complaining of left knee pain. (T. at 244.) Tom J. Meder, M.D., reviewed an x-ray of Plaintiff's left knee, which showed no fracture or significant arthritis but some degenerative change. (T. at 244-45.) Dr. Meder ordered a three-day work release, and then released Plaintiff to perform light work. (T. at 244.)

On December 13, 2012, State Agency medical consultant, J. R. Saphir, M.D., found that Plaintiff was able to perform sedentary work with some postural limitations. (T. at 78, 330-31.)

**5.     Testimonial and Other Evidence**

Plaintiff indicated in her Function Report, dated May 19, 2012, that her daily activities involved getting dressed, making meals, cleaning, getting her son ready for school, and resting her leg. (T. at 180.) Plaintiff reported that she was in constant pain. (T. at 180-81.) Her son helped with meals and household chores. (T. at 181.) She reported going outside a few hours a day. (T. at 182-83.) Plaintiff's hobbies included reading, watching television, listening to the radio, and fishing. (T. at 184, 188.) However, she indicated she had not fished in quite a while because of her left knee pain. (T. at 184.) Plaintiff reported that sitting was "fine so long as my leg is up." (T. at 185.) She "cannot walk very far." *Id*. She cannot climb stairs, kneel, squat, or reach. *Id*.

At the administrative hearing, Plaintiff reported that she filed for disability because her "whole left leg" was in constant pain. (T. at 47.) Plaintiff spends most of her day sitting and reading. (T. at 52.) She cooks and takes a bath daily. *Id*. Plaintiff denied spending time watching television. *Id*. She does not go outside. (T. at 53.) Due to the fatigue from her thyroid, she naps every day. *Id*. She watches her son play videogames after school and they make dinner together. (T. at 53.) She typically sits while making dinner. (T. at 53, 181.)

Significantly, Plaintiff testified that over the course of a day, she was able to stand for about two hours. (T. at 54.) She was able to walk for "maybe an hour or two." *Id*. Plaintiff testified she can bend at the waist, and push and pull things. (T. at 55.) She has no trouble with her hands and fingers. *Id*. However, she testified that she cannot go up and down stairs. *Id*.

## B.     Development of the Administrative Record

Plaintiff contends that the ALJ erroneously failed to develop the record by not recontacting Dr. Smallman "for clarification as to a complete functional assessment as to Plaintiff's limitations." (Dkt. No. 9 at 12-15.) Defendant responds that under the regulations, recontacting a physician is required only where the ALJ did not have adequate evidence to determine whether the claimant was disabled. (Dkt. No. 10 at 6-9.) Further, Defendant contends that even where a report suffers some internal inconsistencies, recontacting is not necessary if the ALJ is capable of making a disability determination given the other evidence of record. *Id*. Defendant is correct.

The ALJ has a duty to affirmatively develop the administrative record in light of the nonadversarial nature of a benefits proceeding, regardless of whether the claimant is represented by counsel. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations omitted). This includes a duty to contact treating and other medical sources to clear gaps in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). The Secretary's regulations state that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d); *Perez*, 77 F.3d at 47. However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 at 72 n.5 (citing *Perez*, 77 F.3d at 48).

In this case, there were no obvious gaps in the administrative record, and the ALJ possessed Plaintiff's complete medical history. Indeed, Dr. Smallman's office provided treatment notes, as well as the February 8, 2013, medical source statement. (T. at 341-78, 288-389, 379-384.) Although he assigned Dr. Smallman's opinions of temporary "total disability" little evidentiary weight, the ALJ considered Dr. Smallman's contemporaneous notes rendered over the course of Plaintiff's treatment. (T. at 19.) For example, in November 2012, Dr. Smallman stated that Plaintiff's condition would not normally be a significantly disabling condition. (T. at 19, 368.) In March 2013, Dr. Smallman noted that it was unusual for a person with her degree of arthritis to have the degree of disability that Plaintiff presented with. (T. at 19, 388.) Dr. Smallman noted that Plaintiff had "adopted a disabled lifestyle," but that she would be able to perform sedentary activities. (T. at 19, 388.) The ALJ also considered ANP Butler's encounter notes. (T. at 19.) As such, the ALJ was under no general obligation to seek additional information, or to recontact Dr. Smallman.[12]

Remand for gaps in the record is appropriate only where the court is unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (citations omitted). Moreover, any obligation of the ALJ to develop the record must be weighed against the fact that the claimant bears the burden at the first four steps and must sufficiently demonstrate that her impairments meet the definition of a disability. *See Kohler*, 546 F.3d at 265.

---

[12] Effective March 26, 2012, the Commissioner amended the regulations to remove former paragraphs 20 C.F.R. §§ 404.1512(e) and 416.912(e) and the duty it imposed to re-contact a disability claimant's treating physician under certain circumstances.

As discussed above, the administrative record in this case was ripe with evidence regarding Plaintiff's medical history, including objective medical evidence and several opinions of both treating and non-treating sources. The Court finds that there was no gap in the administrative record, and that there was ample evidence in the record to enable the ALJ to render a decision regarding Plaintiff's medical condition. Accordingly, there was no need to recontact Dr. Smallman for a functional assessment.

### C.    Residual Function Capacity

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include the claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R.

§§ 404.1569a(a), 404.1569a(b), and 404.969a(a).  Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id.*

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and nonexertional limitations.  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted).  "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient."  *Roat*, 717 F. Supp. 2d at 267 (citation omitted).  "RFC is then used to determine the particular types of work a claimant may be able to perform."  *Whittaker*, 717 F. Supp. 2d at 440.

After "careful consideration of the entire record," the ALJ reasonably concluded that during the relevant period Plaintiff retained the RFC to:

> lift and/or carry 20 pounds occasionally and ten pounds frequently, sit for six hours in an eight hour day, stand for two hours in an eight hour day, and walk for two hours in an eight hour day.  The claimant is able to bend and stoop without limitation and is able to occasionally squat, kneel, crawl, and climb stairs due to her obesity and left knee impairment.  This is consistent with the ability to perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a).

(T. at 17.)

In reaching this determination, the ALJ afforded "great weight" to Dr. Ganesh's opinion that Plaintiff had no limitations for sitting or using her upper extremities, and "moderate to severe" limitations for standing, walking, and climbing. (T. at 19, 290-93.) The ALJ also considered the opinions of Dr. Smallman and ANP Butler. (T. at 19.) However, the ALJ afforded "little evidentiary weight" to Dr. Smallman's opinions of "temp total disability" because they did not provide a functional assessment of Plaintiff's specific limitations and because the ultimate determination of disability under the SSA is reserved to the Commissioner. (T. at 19, 379-84.) In light of Plaintiff's testimony that she was able to stand for two hours and walk for one to two hours during an eight hour day, the ALJ assigned "some weight" to Dr. Smallman's restrictions for kneeling, climbing and squatting, and restriction to sedentary activities. (T. at 19, 54, 382.)

The ALJ assigned "some weight" to the opinions Dr. Jordan and Dr. Saphir that Plaintiff was able to perform sedentary work with some postural limitations. (T. at 20.) The ALJ assigned "little evidentiary weight" to the opinions of Dr. Berg and Dr. Meder because both were issued well before Plaintiff's alleged disability date. *Id.* The ALJ also afforded "little evidentiary weight" to Dr. Legrett's opinion that Plaintiff had a 100% temporary impairment in December, 2011, because Dr. Legrett's opinion did not provide a functional assessment of Plaintiff's specific limitations, and therefore, was of little probative value. *Id.* The ALJ also afforded "little evidentiary weight" to Dr. Legrett's opinion because the ultimate determination of disability is reserved to the Commissioner. *Id.*

### D. **Plaintiff's RFC**

Plaintiff argues that her RFC was not supported by substantial evidence because the ALJ relied upon Dr. Ganesh's vague opinion, failed to consider Dr. Smallman's opinions, and erred in

his assessment of Plaintiff's credibility.  (Dkt. No. 9 at 14-17.)  For the reasons discussed below, the Court finds that Plaintiff's RFC is supported by substantial evidence.

### 1.    Dr. Ganesh's Opinion

Plaintiff argues that the ALJ improperly relied upon and afforded "great weight" to Dr. Ganesh's vague opinion that Plaintiff had "[m]oderate to severe limitation standing, walking, and climbing."  (Dkt. No. 9 at 15-16; T at 292.)  Specifically, Plaintiff argues that because Dr. Ganesh did not clarify the length of time that Plaintiff could perform each activity, nor specify at what point Plaintiff would no longer be dependent upon crutches, the ALJ's decision was unsupported by substantial evidence.  (Dkt. No. 9 at 16.)  Defendant responds that the term "moderate" is not "excessively vague" and further argues that the ALJ's specific limitations were supported by the record as whole.  (Dkt. No. 10 at 9-10.)  The Court agrees with the Commissioner.

Relying on *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds*, 20 C.F.R. § 416.960(c)(2), Plaintiff correctly points out that a consultative examiner's report which concludes that a claimant's condition is "mild" or "moderate" without additional information does not allow an ALJ to infer that a claimant is capable of performing the exertional requirements of work.  (Dkt. No. 9 at 15.)  In this case, however, Dr. Ganesh's opinions were supported by her extensive examination of Plaintiff.  *See, e.g.*, *Waldau v. Astrue*, No. 5:11-CV-925 (GLS), 2012 WL 6681262, at *4, 2012 U.S. Dist. LEXIS 180641, at *8 (N.D.N.Y. Dec. 21, 2010) (consultative examiner's opinion that claimant was restricted to "mild to moderate limitation lifting, carrying, and pulling" provided substantial evidence that claimant could only push, pull, lift and carry up to twenty pounds occasionally and ten pounds frequently); *see also Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013);

*Mancuso v. Colvin*, No. 12-cv-642S, 2013 WL 3324006, at *4, 2013 U.S. Dist. LEXIS 92436, at *10 (W.D.N.Y. July 1, 2013) (using the phrase "moderate limitations" does not render [a doctor's] opinion vague or non-substantial for purposes of the ALJ's RFC determination).

Here, Dr. Ganesh's opinion that Plaintiff had "[m]oderate to severe limitation standing, walking, and climbing" was well-supported and based upon a thorough examination. (T. at 290-93.) For example, Dr. Ganesh indicated that Plaintiff was unable to walk on her heels or toes or to squat. (T. at 291.) Dr. Ganesh noted that Plaintiff used crutches to take the weight off of the left leg, which appeared necessary at that time, and that Plaintiff had tenderness in the left knee. (T. at 291-92.) Dr. Ganesh also opined that Plaintiff did not appear in acute distress, needed no assistance changing for the examination or getting on or off the examination table, was able to rise from the chair without difficulty, had full range of motion in her shoulders, elbows, forearms, wrists, and ankles, had no muscle atrophy, and had no significant varicosities or trophic changes. *Id*. Dr. Ganesh reported that Plaintiff's hand and finger dexterity were intact and that she had a grip strength 5/5 bilaterally. (T. at 292.) Her cervical and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. *Id*. Plaintiff had full range of motion in her right knee and right hip. *Id*. Her left knee and left hip flexion were 90 degrees. *Id*

Dr. Ganesh's opinion that Plaintiff had "no limitation" sitting and in using her upper extremities is clearly compatible with sedentary work. *See* C.F.R. § 404.1567(a) ("a sedentary job is defined as one which involves sitting"); SSR 96-9p, 1996 WL 374185, at *3. Dr. Ganesh also opined that Plaintiff had "[m]oderate to severe limitations standing, walking, and climbing." (T. at 292.) Because Dr. Ganesh's opinion was supported by "additional information," i.e., objective medical findings, the opinion was not "excessively vague" and provided an adequate

basis for the ALJ to infer that Plaintiff was capable of performing the exertional requirements of sedentary work. *See, e.g.*, *Stivers v. Colvin*, 5:11-cv-1019, 2013 WL 3327958, at \*3, 2013 U.S. Dist. LEXIS 92397, at \*\*8-9 (N.D.N.Y. July 2, 2013) (examiner's opinion that the claimant had moderate limitations in his ability to walk, climb, lift, carry, push, and pull was not vague and entitled to great weight where examiner's opinions were supported based upon a thorough examination ); *Mancuso*, 2013 WL 3324006, at \*4. Accordingly, the ALJ's determination to afford Dr. Ganesh's opinion "great weight" was not erroneous. *Yassin v. Comm'r Soc. Sec.*, 5:12-CV-1712 (LEK/CFH), 2014 WL 795989, at \*5 (N.D.N.Y. Feb. 27, 2014) (finding opinion that the claimant should "avoid activities that require moderate or greater exertion" was not vague and entitled to great weight, where consultative examiner made specific findings based on a physical examination of the claimant).

Moreover, the ALJ's specific limitations were supported by the record as a whole. In August, 2012, ANP Butler assigned Plaintiff a 50% impairment rating and released her to perform light duty. (T. at 358.) Dr. Saphir found that Plaintiff was able to perform sedentary work with some postural limitations. (T. at 78, 330-31.) Plaintiff testified that she can stand for two hours and walk for "an hour or two" over the course of an eight-hour day. (T. at 54.) In sum, substantial evidence of record supported the ALJ's determination regarding Plaintiff's ability to sit, stand, walk and engage in other postures.

## 2.      Dr. Smallman's Opinions

Plaintiff also argues that the ALJ failed to consider the opinions of Dr. Smallman in which he *did* provide a functional assessment of Plaintiff's limitations. (Dkt. No. 9 at 13-14) (emphasis in original). For example, Dr. Smallman opined that Plaintiff could never climb ramps, stairs, ladder or scaffolds, balance, stop, kneel, crouch of craw. (T. at 381-82.) In

determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ is responsible for determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946(c). Moreover, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

Here, the ALJ considered and afforded "some weight" to Dr. Smallman's restrictions for kneeling, climbing, and squatting, and restriction to sedentary activities. (T. at 19.) Plaintiff testified that she was able to stand for two hours and walk for one to two hours. (T. at 54.) She also testified that she was able to bend at the waist and could use her hands and fingers. *Id.* "After careful consideration of the entire record," the ALJ accommodated Plaintiff's limitations regarding standing and walking and other postures by crafting a RFC that controlled the amount of time Plaintiff would be expected to sit, stand, walk, and engage in other postures. (T. at 17.) In this case, it is sufficient that the ALJ noted that he "carefully considered the entire record" in reaching his decision, and an ALJ need not "explicitly . . . reconcile every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981).

Furthermore, "[i]t is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts," such as the one in the case. *Aponte v. Sec'y Dept. of Health & Human*

*Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted); *Veino v. Barnhart*, 312 F.3d 578,

588-89 (2d Cir. 2002) (finding that "it was within the province of the ALJ" in resolving the

evidence to accept parts of a doctor's opinion and reject others).  The Court finds that Plaintiff's

physical RFC was supported by substantial evidence, and remand is not warranted on these

grounds.  *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (citations omitted).

### 3.    Plaintiff's Credibility

In addition to reviewing the medical evidence in determining the RFC, the ALJ must

review the credibility of the claimant.  The Court reviews an ALJ's findings of fact under a

substantial evidence standard.  "It is the function of the Commissioner, not the reviewing courts,

to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the

claimant." *Aponte*, 728 F.2d at 591 (citation omitted).  In making a credibility determination, the

hearing officer is required to take the claimant's reports of pain and other limitations into

account.  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based

on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529; *Genier*, 606

F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996).  The ALJ is required to

consider all of the evidence of record in making his credibility assessment.  *Genier*, 606 F.3d at

50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ must consider "whether there is an underlying medically determinable

physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's

pain or other symptoms."  SSR 96-7p, 1996 WL 374186, at *2.  This finding does not involve a

determination as to the intensity, persistence, or functionally limiting effects of the claimant's

pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to

produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic

work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen v. Covlin*, No. 1:11-CV-829, 2014 WL 1289575, at *4, 2014 U.S. Dist. LEXIS 41260, at *10 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(b); SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other

relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Id.* (citing 20 C.F.R. § 404.1512(b)(3)).

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p, 1996 WL 374186, at *3. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii); 416.929(c)(3)(i)-(vii).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (T. at 17.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. *Id.* Plaintiff argues that the ALJ's credibility determination of Plaintiff was unsupported by substantial evidence. (Dkt. No. 9 at 16-17.) First, Plaintiff argues that the ALJ selectively evaluated the medical evidence to support a determination that Plaintiff's allegations were not credible. *Id.* Second, Plaintiff argues that the ALJ overstated her daily activities and took her statements out of context. *Id.* at 15. Defendant

argues the ALJ's credibility finding was proper and supported by substantial evidence. (Dkt. No. 10 at 10-12.) The Court agrees with Defendant.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 2, 1999)); *Ferraris*, 728 F.2d at 587. "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). The ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at * 10, 2003 U.S. Dist. LEXIS 6988, at *30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998)

("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

Here, the ALJ applied the appropriate standards in assessing the credibility of Plaintiff's statements regarding the severity of her symptoms and limitations. (T. at 17-18.) In making his credibility assessment, the ALJ correctly considered a number of factors, including discrepancies in Plaintiff's various statements and in her testimony with regard to the nature and scope of her daily activities. *Id*.; 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p; SSR 96-7p.

For example, the ALJ noted that Plaintiff presented with crutches at the May 24, 2012, consultative examination, yet was not using any assistive devices when she treated with Dr. Smallman on May 11, 2012. (T. at 291, 312, 345.) The May 11, 2012, encounter notes indicate that Plaintiff was "ambulating with a slow steady gait." (T. at 312.) Plaintiff informed Dr. Ganesh that her doctor "did want her to try to walk without crutches." (T. at 290.) During the May 24, 2012, consultative exam, Plaintiff appeared in no acute distress. (T. at 291.) She could walk six or seven feet with a limp. *Id*. She needed no help changing for the exam or getting on and off the exam table. *Id*. She was able to rise from a chair without difficulty. *Id*. Further, on February 8, 2013, Dr. Smallman opined that Plaintiff did not require the use of a cane to ambulate. (T. at 380.)

The ALJ also found that Plaintiff's reported daily activities did not support her allegations regarding the severity of her conditions. (T. at 18.) Plaintiff reported that she can clean, cook, prepare meals, wash dishes, do laundry, dress, bathe, groom herself, and care for her son. (T. at 180, 182.) Plaintiff testified that she was able to stand for two hours and walk for one

or two hours.  (T. at 54.)  She testified that was able to bend at the waist and use her hands and

fingers.  *Id.*

In addition, although Plaintiff reported that she stopped working at Walmart due to her

left leg and knee conditions, Plaintiff testified that she was terminated from her job at Walmart

because she "interacted with a customer wrong."  (T. at 44, 161.)  Plaintiff subsequently applied

for and received unemployment insurance benefits in 2011 and 2012.  (T. 154-55.)  The ALJ

noted that while not dispositive, Plaintiff's application for and receipt of unemployment

insurance, including her certification that she was "ready, willing, and able to work," undermines

her credibility regarding her inability to work.  (T. at 18); *see Deboer v. Astrue*, 5:11–CV–1359

(GLS), 2012 WL 6044847 at *4, 2012 U.S. Dist. LEXIS 172440, at *12 (N.D.N.Y. Dec. 5, 2012)

("an ALJ may consider evidence that the claimant received unemployment benefits and/or

certified that she was ready, willing, and able to work during the time period for which she

claims disability benefits as one factor relevant to assessing her credibility") (collecting cases).

"After careful consideration of the evidence," the ALJ found that Plaintiff's allegations of

disabling symptomatology were not credible to the degree alleged.  (T. at 17.)  The ALJ

determines issues of credibility, and deference should be given to his judgment because he heard

Plaintiff's testimony and observed her demeanor.  *See Garrison v. Comm'r of Social Sec.*, No.

08-CV-1005, 2010 WL 2776978, at **5-7, 2010 U.S. Dist. LEXIS 70411 (N.D.N.Y. July 14,

2010).  Based upon the above, the Court find that the ALJ properly set forth his reasons for

finding Plaintiff's claims inconsistent with regard to the intensity, persistence, and limiting

effects of her symptoms.  (T. at 17-18.)  Accordingly, the Court finds that the ALJ did not err in

his assessment of Plaintiff's credibility.  Plaintiff's RFC is based upon proper legal standards and

is supported by substantial evidence.

E. **Application of the Grids**

Plaintiff lastly argues that the ALJ erred in applying the grids at step five because Plaintiff had significant nonexertional impairments requiring the testimony of a vocational expert. (Dkt. No. 9 at 18-19.[13]) Defendant responds that the ALJ's RFC finding is supported by substantial evidence and that the ALJ appropriately used the grids as a framework to find Plaintiff not disabled. (Dkt. No. 10 at 12-13.) The Court agrees with the Commissioner.

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable grids. *Rosa*, 168 F.3d at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's RFC in conjunction with the claimant's age, education, and work experience. *Id.* "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id.*

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry*, 209 F.3d at 122; 20 C.F.R. §§ 404.1560(c), 416.960(c). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the grids or consult a vocational expert. *See Rosa*, 168 F.3d at 78; 20 C.F.R. pt. 404, subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular grid rule,

_____

[13] Plaintiff also argues that the ALJ's errors in developing the record and determining Plaintiff's RFC render his step five decision of "not disabled" unsupported by substantial evidence. (Dkt. No. 9 at 18.) For the reasons previously discussed, Plaintiff's RFC was supported by substantial evidence and the ALJ did not err in developing the record.

the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (citing *Bapp*, 802 F.2d at 605). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given her functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist LEXIS 5125, at *18 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997)); 20 C.F.R. § 404.1569a(c). This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work. *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411).

An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids). Nonetheless, the existence of nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a vocational expert. *Zabala*, 595

F.3d at 411.  Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible.  *Id.*

In this case, Plaintiff argues that sole reliance on the grids was error because "the ALJ's own RFC determination limited her to 'the ability to perform less than the full range of sedentary work,' and therefore, sedentary occupational base would be eroded by Plaintiff's less than sedentary capacity."  (Dkt. No. 9 at 18.)  Defendant responds that "testimony of a vocational expert is required only where a claimant's work capacity is significantly diminished by her nonexertional limitations."  (Dkt. No. 10 at 12.)  Defendant is correct.

As determined above, the ALJ's RFC finding was supported by substantial evidence and based upon correct legal principles.  Plaintiff's nonexertional limitations set forth in the RFC were that she was "able to occasionally squat, kneel, crawl, and climb stairs due to her obesity and left knee impairment."  (T. at 17.)  In discussing Plaintiff's postural limitations, the ALJ noted that the impact of her postural restrictions did not significantly erode the sedentary occupational base.  (T. at 21-22.)  Accordingly, the ALJ determined that "[a] finding of 'not disabled' [was] therefore appropriate under the framework of Medical-Vocational Rule 201.24 and Social Security Ruling 96-6p." (T. at 22.)  Indeed, SSR 96-9p specifically states that "postural limitations or restrictions related to such activities as climbing ladders, ropers or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work because those activities are not usually required in sedentary work."  1996 WL 374185, at *7 (SSA July 2, 1996).

Therefore, substantial evidence supports the ALJ's finding that Plaintiff's nonexertional impairments do not significantly reduce her occupational base.  Under these circumstances, the testimony of a vocational expert or other similar evidence regarding the existence of jobs

Plaintiff could perform in the economy was unnecessary.  *See Lawler v. Astrue*, 512 F. App'x 108, 112 (2d Cir. 2013).  Accordingly, the ALJ's reliance on the grids to provide the framework for determining that Plaintiff's postural limitations were not disabling was correct.  The ALJ also correctly considered the Plaintiff's age, education, work experience, and RFC and concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform.  (T. at 21-22.)  As such, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. §§ 404.31520(g), 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for summary judgment on the pleadings be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: December 22, 2015
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge